NEW YORK COUNTY—HON. EDWARD C. WEST, SURROGATE—
July, 1860.

## BASCOM, TRUSTEE, ETC. *v.* NICHOLS.

*In the Matter of the Final Accounting of the Executor of the Last Will, etc., of* DAVID NICHOLS, *deceased.*

The testator, by his will, directed that in case of his widow's death without issue, a certain sum should be paid over to such five persons, residents of Addison county, Vermont, as should be named and appointed by the judges of the Supreme Court of Vermont, to be trustees, "to found, establish, and manage an institution for the education of females, to be located in the town of Middlebury, Vermont." After certain specific legacies, he bequeathed the residue of his estate "unto the five persons who shall be named as trustees by the Supreme Court of Vermont" for the same purpose. No time was given within which such appointment should be made, and no other mention of the institution, its object, or purpose, was given. The residue consisted of personal property, situated in this State, which was the testator's domicil at the time of his death.

*Held*, that the bequests were invalid.

The construction and validity of a trust, although for purposes to be carried out in another State, are governed by the laws of the State in which the testator resided at the time of making his will, and at his death.

The rule that the law of domicil governs, applies to the manner and form, conditions and limitations, of the gift, equally with its object.

The will was executed in the State of New York, August 21, 1857, and was proved in the county of New York, April 5, 1858. Letters testamentary were granted on the same day to Lewis B. Brown. At the time of making his will, and at the time of his death, the testator resided, and his personal property was situated, in the State of New York.

It does not appear that the will has been proved in any other State.

The testator, by his will, directed that in case of the death of his wife without issue, "the sum of twenty-five thousand dollars be paid over to such five persons, residents of the county of Addison, in the State of Vermont, as shall be

named and appointed by the judges of the Supreme Court of the State of Vermont, to be trustees, to found, establish, and manage an institution for the education of females, to be located in the town of Middlebury, in said State of Vermont." And, after certain specific bequests, went on—" All the rest, residue, and remainder of my property and real estate, of whatever kind, and wherever situated, and from whencesoever derived, I give, devise, and bequeath unto the five persons who shall be named and appointed as trustees by the Supreme Court of the State of Vermont, to found and establish an institution for the education of females, to be located in Middlebury aforesaid, and of which mention is hereinbefore made."

On the final accounting of Lewis B. Brown, the executor, William F. Bascom, and four others, residents of Addison county, Vermont, appeared, claiming to be trustees appointed by an order of the Supreme Court of Vermont, made at a term held on the first Tuesday of January, 1860, upon filing a document " purporting to be a copy of the last will and testament of David Nichols ;" and also claiming to be trustees under a written *memorandum* of appointment of the six judges of the Supreme Court of Vermont. As such, they claimed the residue of the estate, amounting to $13,000, for the object of the trust. The claim was contested by the widow and next of kin, on the ground that the trust contained in the will, and the bequest and disposition of $25,000, after the decease of the wife and of the residuary legatee, were inoperative and void.

DAVID R. JACQUES *and* CORNELIUS MINOR, *for Widow and Next of Kin.*

I. The construction and validity of this trust, although for purposes to be carried out in another State, are governed by the laws of New York, in which the testator resided at the time of making his will, and at his death. 1. A gift of personal property in a foreign jurisdiction is no exception to the rule that the law of the domicil governs bequests. (*Story, Confl. Laws,* §§ 38, 101, 479; *Phill. on Domicil,* 16, 19 ;

*Stanley* v. *Bernes,* 3 *Hagg.,* 373; *Croker* v. *Hertford,* 4 *Moore, P. C.,* 358.) 2. A gift of money to be invested in lands in another State is no exception, and trusts declared by a will of such lands are governed by the law of the domicil of the testator. ( *Wood* v. *Wood,* 5 *Paige,* 596; *Hill on Trustees,* 454, 468.) So a gift, to a foreign devisee, of lands in this State, or to a foreign legatee, is governed by the law of New York, in conformity to the rule that the foreign disposition is controlled by the law of the place. (*Banks* v. *Phelan,* 4 *Barb.,* 88; *Boyce* v. *City of St. Louis,* 29 *Barb.,* 650, 657; *Story, Confl. Laws,* § 428; *Burge, Col. and For. Law,* 857–8.) 3. Charitable bequests for foreign objects are no exception to this rule. (*Story, Confl. Laws,* § 479; *Eq. Jur.,* § 1184; *Curtis* v. *Hutton,* 14 *Ves.,* 537; 8 *Simon,* 300; *Phelps* v. *Phelps,* 28 *Barb.,* 127—affirmed as *Phelps* v. *Pond,* 23 *N. Y. R.,* 69; *Boyce* v. *City of St. Louis,* 29 *Barb.,* 653; *Banks* v. *Phelan,* 4 *Barb.,* 88; *Burr* v. *Smith,* 7 *Verm.,* 241; *Magill* v. *Brown,* 1 *Brightly,* 346, n.) 4. The rule that the law of the domicil governs bequests, applies to the manner and form, conditions and limitations, of the gift. A limitation that suspends otherwise than during life, or for more than two lives, being void in New York, will not be sustained when the legatee or object is foreign, although the gift may be for charity. In *Morgan* v. *Masterton* (4 *Sandf.,* 442), and in *Banks* v. *Phelan,* there were limitations over to charity after three lives, which were declared void. The result would have been the same had the charities been foreign; as in *Phelps* v. *Pond,* where the bequest of $50,000, by a testator residing in New York, for a college in Liberia, was held void by the Court of Appeals, affirming the decision of the general term, on the ground, among others, that there was a suspension of ownership not allowed by the statutes of New York. And in *Magill* v. *Brown* (1 *Brightly,* 346, n.), gifts by a testatrix domiciled in Pennsylvania to charities in Virginia and other States, were sustained as valid by the law of the domicil. And in *Pres. of U. S.* v. *Drummond,* Rolls, 12 May, 1838, cited in 7 *Cl. & F.,* 155 (the case of the

Smithsonian bequest), a gift for foreign charity was sustained upon the rule of the law of domicil.  5. There is one qualification to this rule.  If a testator disposes of assets situated in a foreign State, and such disposition is against its law or public policy, it will not be sustained, however valid by the law of his domicil.  (*Skiff* v. *Solace*, 23 *Verm.*, 279 ; *Mahorner* v. *Hooe*, 9 *Smedes & Marsh.*, 247 ; *Story, Confl. Laws*, § 38.)  In the present case, the assets and the domicil are in the State of New York, and both rules concur ; if, therefore, any disposition in the will of David Nichols is invalid by the law or public policy of New York, it is void by the double law of *domicil* and *situs*.

II. This trust is void for indefiniteness and uncertainty. *As to the trustees.*  1. No trustees are named or appointed by the will.  2. The *time* when they are to be appointed is not fixed by the will, nor is it limited to take place within such a period or in such a manner as to prevent a suspension. 3. Neither age, sex, nor qualification (except residence) of trustees is prescribed.  They may be infants, and perhaps should be females.  4. There is no provision for their successors, nor "mode of perpetuating and governing" the institution prescribed.  5. It is not only uncertain whether they are to be appointed by the judges individually, or by the court, but whether, if by the judges individually, being persons so designated, the appointment is to be by those in office at the date of the will, or of testator's decease, or of the appointment, whenever made ; and if by the court, whether it is by the court exercising its judicial authority or a power of appointment under the will.  6. If acting judicially, can the court proceed *ex parte*, without notice to all parties, and without probate and administration in Vermont?  *As to the subject of the trust*, it is uncertain how much of the fund is to be applied to purchase of lands and erection of buildings, and how much to current expenses, "the amount of expenditure and investment necessary to establish and maintain it being wholly undetermined."  (*Phelps* v. *Pond, supra.*)  A grant or devise to a charitable use, without *interposing a*

*trustee*, or to a non-existing corporation, or to an unincorporated society, is *at law* void for want of a person having a sufficient capacity to take. (*Year Books*, 49 Edw. III., 3, 7 ; 9 Hen. VI., 23, 19, 246 ; *Fitzh.*, *Dev.*, 2, fol. 284 ; 4 Edw. III., 3, 7 ; *Jackson* v. *Corey*, 8 *Johns.*, 385 ; *Hornbeck* v. *Westbrook*, 9 *Id.*, 73 ; *Atty. G.* v. *Tancred*, 1 *W. Bl.*, 90 ; *Baptist Ass.* v. *Hart*, 4 *Wheat.*, 1 ; *Com. Dig. Devise*, *K*; *Story Eq. Jur.*, § 1146 ; *Hill on Trustees*, 176, 212.) In equity, "in order to give jurisdiction to the Court of Chancery, it is absolutely necessary that there should have been an appointment, or at least an intended appointment of trustees." (*Boyle on Charities*, 237.) It may be said that here the testator, if he has not appointed, has intended an appointment. The will does not authorize or direct the court or judges in Vermont to appoint ; it gives to such trustees as they shall appoint : it is a gift, on condition they should appoint ; it is a gift to certain persons when they shall be clothed with a certain capacity and character, if the court or judges have the power of appointment, and exercise it. The testator has not, in terms, conferred any such power. It is doubtful if such a power can be conferred upon a court acting judicially. It is plain that the testator has not directed the appointment to be made within a period limited by law. And a court of equity has no power to appoint trustees where none have been named originally, although it may fill vacancies. (*Hill on Trustees*, 176.) In New York, it is now settled, by the decision of the Court of Appeals, that a trust for charity, if a competent trustee "is not named in the first instance," is invalid : an intended appointment is not sufficient. (*Guild of Whitawyers*, 49 Edw. III., 3, 7 ; *Owens* v. *Meth. Missionary Ass.*, 14 *N. Y.*, 381 ; *Phelps* v. *Phelps*, 28 *Barb.*, 127— affirmed as *Phelps* v. *Pond*, 23 *N. Y.*, 69 ; *Beekman* v. *Bonsor*, 23 *Id.*, 298 ; *Chittenden* v. *Chittenden*, 1 *Am. Law Reg.*, 543.) It is submitted, that while equity will not let a trust fail for want of a trustee, and will, therefore, fill vacancies when they occur, yet it will not supply an original deficiency, and nominate trustees in the first instance.

III. This trust is void for illegality. 1. The design of an institution for education, "founded, established, located, and managed," at Middlebury, Vermont, contemplates and requires the purchase of lands and erection of buildings; there is, therefore, a conversion of the fund into real estate, to the extent required for the purposes of the trust, and the rules and statutes governing trusts of real estate apply. (*Beekman* v. *People*, 27 *Barb.*, 264; *Giblet* v. *Hobson*, 3 *Myl. & K.*, 517; *Atty. G.* v. *Hodgson*, 15 *Sim.*, 146; *Langstaff* v. *Rennison*, 11 *Eng. L. & Eq.*, 268; *Atty. G.* v. *Hull*, 9 *Hare*, 647; *Dunn* v. *Bownas*, 1 *Kay & Johns.*, 596; *Tyre* v. *Corp. Gloucester*, 14 *Beav.*, 173; *Mayor of Feversham* v. *Ryder*, 5 *De G. M. & G.*, 350.) 2. This trust, being an express trust of real estate to the extent to which there is a conversion, is void, because it is not one of the express trusts authorized by the Revised Statutes, which have abolished all others; and charitable trusts are allowed by statute only in certain specified cases. (3 *Rev. Stat.*, 5 ed., 15, 16, §§ 45, 55; *Story, Eq. Jur.*, § 1152; *Broom's Maxims*, 246–8; 2 *Dwarris on Stat.*, 689; *Sussex Peerage Case*, 11 *Cl. & F.*, 143; 8 *Jur.*, 795; *Yates* v. *Yates*, 9 *Barb.*, 324; *King* v. *Rundle*, 15 *Id.*, 144; *Chittenden* v. *Chittenden*, 1 *Law Reg.*, 543; *McCaughal* v. *Ryan*, 27 *Barb.*, 377; *Beekman* v. *People*, 27 *Id.*, 260,—affirmed, 23 *N. Y.*, 298; *Wilson* v. *Lynt*, 30 *Barb.*, 124; *Downing* v. *Marshall*, 23 *N. Y.*, 366; *Ayres* v. *Meth. Epis. Church*, 3 *Sandf.*, 351.) 3. This trust cannot be sustained as a power in trust. (2 *Rev. Stat.*, 4 ed., 140, §§ 58, 59; *Downing* v. *Marshall*, 23 *N. Y.*, 366.) 4. This trust is void under the restrictions of the statute, upon the suspension of the absolute power of alienation of real estate. (3 *Rev. Stat.*, 5 ed., 11, § 15.) By a uniform series of decisions,—from *Coster* v. *Lorillard*, 14 *Wend.*, 265, continued by *Hawley* v. *James*, 16 *Id.*, 61; *Hone's Ex.* v. *Van Schaick*, 20 *Id.*, 566; *Boynton* v. *Hoyt*, 1 *Den.*, 53; *Yates* v. *Yates, supra; Leonard* v. *Burr*, 18 *N. Y.*, 96; and many other cases,—the rule is firmly established that the suspension can be effected in no other way than by a designation of lives; and for no other period than

during two lives. And there is no case in which trusts of real estate for charity are made an exception. In *Williams* v. *Williams* (8 *N. Y.*, 525), the trust was of personal estate alone, and Judge Denio at the outset of his opinion points out this distinction. The trust being void as a disposition of real estate, the whole must fail; for, although a conversion of the whole fund was not intended, yet the testator has not indicated how much is to be applied either as real or personal estate. (*Shelford on Mort.*, 203; *Beekman* v. *People*, 27 *Barb.*, 278; *Beekman* v. *Bonsor*, 23 *N. Y.*, 298; *Chapman* v. *Brown*, 6 *Ves., Jr.*, 406; *Moggridge* v. *Thackwell*, 1 *Ves.*, 464; *Atty. G.* v. *Hinxman*, 2 *J. & W.*, 270.) 5. This trust is void, under the restrictions of the statute, upon suspension of the absolute ownership of personal property, and upon accumulations. (*Matter of Howe*, 1 *Paige*, 214; *Potter* v. *Chapin*, 6 *Id.*, 639; *Williams* v. *Williams*, 8 *N. Y.*, 525; *King* v. *Woodhull*, 3 *Edw. Ch.*, 79; *Sem. of Aub.* v. *Kellogg*, 16 *N. Y.*, 83; *Wright* v. *Trustees Meth. Epis. Church*, 1 *Hoff. Ch.*, 202; *Shotwell* v. *Mott*, 2 *Sandf. Ch.*, 46; *Newcomb* v. *St. Peter's Church, Id.*, 636; *Hornbeck* v. *Am. Bible Soc.*, *Id.*, 133; *Andrew* v. *N. Y. Bible Soc.*, 8 *N. Y.*, 559, reversing 4 *Sandf.*, 156; *Banks* v. *Phelan*, 4 *Barb.*, 80; *Yates* v. *Yates*, 9 *Id.*, 324; *Chittenden* v. *Chittenden*, 1 *Am. Law Reg.*, 543; *King* v. *Rundle*, 15 *Barb.*, 144; *Owens* v. *Miss. Soc.*, 14 *N. Y.*, 380; *Beekman* v. *People*, 27 *Barb.*, 260,—affirmed as *Beekman* v. *Bonsor*, 23 *N. Y.*, 298; *Phelps* v. *Phelps*, 28 *Barb.*, 127,—affirmed as *Phelps* v. *Pond*, 23 *N. Y.*, 69; *Downing* v. *Marshall, Id.*, 366; *Morgan* v. *Masterton*, 4 *Sandf. R.*, 440.)

STARR & RUGGLES, *for the Trustees, claimants of the residuary fund.*

I. The bequests are valid charitable bequests. (1.) The rule is, that the intention of the testator is to be carried out, if consistent with the rules of law. (3 *Rev. Stat.*, 5 ed., 38.) In this case, the intention of the testator is clearly manifest. The bequests have a charitable intent or purpose, viz., the advancement of learning. (*Vidal* v. *Girard*, 2 *How. U. S.*,

191, 192; *Owens* v. *Missionary Society*, 14 *N. Y.* [4 *Kern.*], 380.) (2.) The object is defined with sufficient certainty, "to found, establish, and manage an institution for the education of females, to be located in the town of Middlebury, in the State of Vermont." The trust, as set forth, is of so tangible a nature, that the Court can deal with it. (*Ommanney* v. *Butcher*, 1 *Turner & R.*, 260.) And is sufficiently certain to be intelligible. (2 *Story Eq.*, ed. 1861, § 1154, d.) The object is as fully and definitely set out in this will as it has been in many others which have been questioned on the ground of uncertainty, and held good,—as bequests to the "poor of a parish," to the "poor of Sunsbury," "to the inhabitants and parishioners," &c., &c. (*Lewin on Trusts*, 142, 143; *Whicker* v. *Hume*, 13 *Beav.*, 366.) (3.) The subject, *i. e.*, the portion of the estate bequeathed, is ascertained to a cent. In the second item it is $25,000, and the "residue" $13,555.77. (4.) There are trustees competent to take. The testator has provided for their appointment, and this court is asked merely to order the funds in the hands of the executor to be paid over to parties who stand ready to take them, and who are, by the will, made the almoners of the testator's bounty. There is the authority to appoint, and the appointment has been made. (*Shotwell* v. *Mott*, 2 *Sandf. Ch.*, 46; *Beekman* v. *Bonsor*, 23 *N. Y.*, 298, 308, 309; *Williams* v. *Williams*, 8 *N. Y.* [4 *Seld.*], 525.)

II. There is no suspension of the absolute ownership of the property, and the bequest of the residue is given by words, "*de presenti*," and not upon any limitation or condition expressed in the will. At any moment the court of Vermont could appoint. The property bequeathed is personal property. Upon the death of the testator it goes to the executor, and the testator has provided for the appointment of trustees, to whom the residue is to be paid. (1.) The idea of the Supreme Court of Vermont not appointing trustees never occurred to him, and a court of equity will consider them appointed. The trustees take directly from the will; and it is the same as though they had been named in the will.

(2.) Where a party takes by execution of a power, he takes under the authority of the power, equally as if the power and the instrument executing the power were incorporated in one deed. (*Doolittle* v. *Lewis*, 7 *Johns. Ch.*, 45.)   (3.) The law does not require, to make a devise or legacy valid, that the party should be designated by his name of baptism or surname. (*Inglis* v. *Sailors' Snug Harbor*, 3 *Peters' U. S.*, 99, 146.)

III. The bequests being for charitable uses, the statute relative to uses and trusts, and against perpetuities, does not apply. (*Shotwell* v. *Mott*, 2 *Sandf. Ch.*, 46; *Williams* v. *Williams*, 8 *N. Y.* [4 *Seld.*], 541.)

IV. The trusts being for charitable purposes,—to be executed in the State of Vermont by persons there—if they are not in violation of any law of that State, must be supported. (14 *Ves.*, 540; *Oliphant* v. *Hendrie*, 1 *Broch.*, 571; *Att. G.* v. *Stewart*, 2 *Meriv.*, 156; 2 *Maddock's Ch., Pr.*, 61.)

V. By the existing law of the State of Vermont, the trust is valid, and the Court of Chancery possesses, and will exercise, the necessary powers to execute the trust. (*Burr* v. *Smith*, 7 *Verm.*, 241.)

ALEXANDER W. BRADFORD, *for the Executor.*

THE SURROGATE decided that the residuary clause in the will was invalid, but did not state on what grounds; and ordered that the residuary fund, after deducting the costs of this proceeding, be distributed among the widow and next of kin.   And it was further ordered and adjudged, that the bequest and disposition of the sum of twenty-five thousand dollars, after the death of the widow, Caroline B. Nichols, in default of issue, given to the same purpose as the residuary estate, was inoperative and void; and that upon her death, the said sum of twenty-five thousand dollars should be distributed in accordance with the statutes of the State of New York.

An appeal from the decision and decree of the Surrogate was taken to the general term of the Supreme Court.   Pres-

ent, Hon. D. P. INGRAHAM, P. J., and Hon. WILLIAM H. LEONARD, and Hon. GEORGE G. BARNARD, JJ.

The surrogate's decree was affirmed, without argument, no written opinion being rendered; but Justice INGRAHAM being understood to remark, that, in his opinion, the neglect of the testator to fix the time for the appointment of the trustees by the Vermont Supreme Court, was sufficient to invalidate the bequest; and that the case was within the previous ruling of the Supreme Court and the Court of Appeals, in respect to the provisions of the will of Anson G. Phelps for the establishment of a college in Liberia.